UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOVE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WILDCATS OWNER LLC, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-08913-DMR<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 19 |

Plaintiff Samuel Love filed this case on December 14, 2020 alleging that Defendants Wildcats Owner LLC and Wildcats Lessee LLC violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and California's Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53. Plaintiff filed an amended complaint on February 10, 2021. [Docket No. 13 ("FAC").] Defendants move to dismiss the FAC for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [Docket Nos. 19 ("Mot."), 23 ("Reply").] Plaintiff opposes. [Docket No. 22 ("Opp.").] The court held a hearing on March 25, 2021.

For the reasons stated below, Defendants' motion is granted.

**I.  BACKGROUND**

Plaintiff is a paraplegic who uses a wheelchair for mobility. FAC ¶ 1. Defendants own the Argonaut Hotel located at 495 Jefferson Street, San Francisco, CA. *Id.* ¶ 2. Plaintiff alleges that he planned on making a trip to San Francisco in February 2021 and searched for a hotel that could accommodate his disabilities. *Id.* ¶ 14. On October 12, 2020, Plaintiff went to the Hotel's reservation website to book an accessible room. *Id.* ¶ 15. He alleges that the website "fails to provide the information required by the ADA regulations." *Id.* ¶ 17. Instead, the reservations list just "slap[s] the label 'accessible' on all of its public spaces." *Id.* ¶ 18. For example, the hotel has a page stating that it has an "[a]ccessible business center," "[a]ccessible concierge desk," and

"[a]ccessible meeting space." *Id.* ¶ 17.

With respect to guest rooms specifically, the Hotel provides the following information:

- Roll-in shower, tub with grab bars, or transfer shower (specific bathing fixture type is indicated for each room)
- Lowered light switches and thermostats
- Grab bars in bathroom
- Toilets with grab bars
- Accessible vanity
- Accessible routes to all parts of the room
- Roll-in showers
- Accessible guest rooms with mobility features with entry or passage doors that provide 32" of clear width
- Bathroom doors at least 32 inches wide
- Bedroom doors at least 32 inches wide (812 mm)

*Id.* ¶ 22. The hotel also explains:

> Our spacious ADA rooms feature total wheelchair accessibility and have two double beds or one king-sized bed. Standard features in all accessible rooms include lowered peepholes, lowered wall-mounted thermostats, lowered closet rods, flashing fire alarms for the hearing impaired, accessible commodes and sinks, lowered towel bars, grab bars surrounding all commodes, and roll-in showers or bathtubs. Roll-in showers have hand-held shower sprayers with extensions and shower benches.

*Id.* ¶ 23. Plaintiff asserts that these descriptions "fail[] to provide some critical information." *Id.* ¶ 24. Specifically, he asserts that he needs more information about the "core features for the guestroom," including whether (1) the room entrance is at least 32 inches wide; (2) there are at least 30 inches width on the side of the bed to allow transfer from his wheelchair; (3) the sink has sufficient knee clearance, wrapped plumbing to prevent burn contact, and a lowered mirror; (4) the toilet seat is between 17 and 19 inches high and has the two grab bars required by the ADA; (5) the bathing facility is a transfer shower, standard roll-in, or alternate roll-in; and (6) roll-in showers have a shower seat, grab bars, detachable hand-held shower wand, and wall mounted accessories within 48 inches height. *Id.* ¶¶ 26-30. Plaintiff claims that these features are reasonably necessary for him and other wheelchair users to assess whether a given hotel or guest room meets his or her accessibility needs. *Id.* ¶ 31. He alleges that Defendants' failure to provide the required information constitutes a violation of the ADA.

**II.  DEFENDANTS' REQUEST FOR JUDICIAL NOTICE**

Defendants request that the court take judicial notice of the following documents:

1. Printouts of pages from the Hotel's website;
2. A list of cases that Plaintiff has filed in California federal courts;
3. A copy of a consent decree entered between the Department of Justice ("DOJ") and a hotel chain in *U.S. Hilton Worldwide Inc.*, No. 10-cv-1924, ECF No. 5 (D.D.C. Nov. 29, 2010); and
4. A copy of a court's order dismissing an ADA claim in *Arroyo v. JWMFE Anaheim, LLC*, Case No. 21-cv-00014-CJC-KES (C.D. Cal., Feb. 16, 2021) and printouts of pages from the website of the defendant in that case.

[Docket No. 19-2 ("RJN").] The court does not rely on any of these documents in reaching its decision. Accordingly, the RJN is denied as moot.

**III.  LEGAL STANDARD FOR RULE 12(B)(6) MOTION**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id.* at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## IV.     DISCUSSION

### A.     Reservations Rule

Title III of the ADA prohibits discrimination "on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To succeed on a Title III claim, a plaintiff must establish "(1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)). Only the third element is at issue in the present motion.

Public accommodations that were constructed or altered after January 26, 1992 must comply with either the 1991 or 2010 ADA Standards for Accessible Design, depending on the date the construction or alterations began. 28 C.F.R. § 36.406. Facilities that were constructed prior to January 1992 and have not been altered are not required to comply with the 1991 or 2010 Standards but must still "remove architectural barriers . . . where such removal is readily achievable." *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 945 (9th Cir. 2011) (quoting 42 U.S.C. § 12182(b)(2)(A)(iv)).

4

1  Under the regulations implementing the ADA, "[a] public accommodation that owns, leases
2  (or leases to), or operates a place of lodging" must meet several requirements "with respect to
3  reservations made by any means." 28 C.F.R. § 36.302(e)(1). Relevant here, the regulations require
4  a covered lodging facility to:

> (i) Modify its policies, practices, or procedures to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms . . . .

28 C.F.R. § 36.302(e)(1)(i). The regulations also require lodging facilities to:

> (ii) Identify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs . . . .

28 C.F.R. § 36.302(e)(1)(ii). These two requirements are collectively referred to here as the "Reservations Rule."

Plaintiff asserts that the Hotel's reservation system violates the Reservations Rule by failing to describe the hotel's accessibility features in sufficient detail.

**B.   DOJ Guidance**

In 2010, the Department of Justice ("DOJ") provided the following guidance regarding the Reservations Rule:

> The Department recognizes that a reservations system is not intended to be an accessibility survey. However, specific information concerning accessibility features is essential to travelers with disabilities. Because of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information must be included in every instance. For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices). Based on that information, many individuals with disabilities will be comfortable making reservations.
>
> For older hotels with limited accessibility features, information about the hotel should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about

5

important features that do not comply with the 1991 Standards.

28 C.F.R. § Pt. 36, App. A ("2010 Guidance"). The DOJ also noted that, "once reservations are made . . . . many individuals with disabilities may wish to contact the hotel or reservations service for more detailed information." *Id.*

An agency's interpretation of its own regulations has "controlling weight unless it is plainly erroneous or inconsistent with the regulation."[1] *Miller v. California Speedway Corp.*, 536 F.3d 1020, 1028 (9th Cir. 2008) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).

### C.  Defendants' Website

Defendants argue that the Hotel's website provides the information listed in the 2010 Guidance, including the size and number of beds, type of accessible bathing facility, and the type of communications features. Mot. at 8-9. Defendants assert that the website has even more detail than required by the DOJ, since it lists additional specific features, including lowered peepholes, lowered towel bars, hand-held shower sprayers with extensions, and shower benches. *See* FAC ¶ 23. Defendants also point to a consent decree entered between the DOJ and a large hotel chain in *U.S. v. Hilton Worldwide Inc.*, Case No. 10-cv-1924, Docket No. 5 (D.D.C. Nov. 29, 2010). *See* Def. RJN, Ex. 4 ("Consent Decree"). The Consent Decree, which resolved the DOJ's enforcement action against the hotel chain, obligated the defendant to ensure that its reservation system identified key information about its accessible rooms, including the number and size of bed(s), type of bathing facility (roll-in shower or bathtub), visual alarms, type of room (e.g. executive level), suite, kitchen/kitchenette, and view. *Id.* Defendants argue that the Consent Decree reflects the kind of

---

[1] Plaintiff argues that the DOJ's interpretation of the regulations is only entitled to deference if the regulations are uncertain or ambiguous. Opp. at 24; *see Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) ("If uncertainty [about a regulation] does not exist, there is no plausible reason for deference [to the agency's interpretation]. The regulation then just means what it means—and the court must give it effect, as the court would any law."). This argument is not persuasive. The Reservations Rule requires hotels to describe their accessible features in "enough detail" to "reasonably permit" individuals with disabilities to assess whether the hotel meets their accessibility needs. Looking solely at the language of the regulation, it is far from clear what constitutes "enough" detail or when an individual's demand for more information is "reasonable." *See Kisor*, 139 S. Ct. at 2410 (finding that ambiguous regulations "involve[] a choice between (or among) more than one reasonable reading" such that "the court must make a judgment call"). Thus, the Reservations Rule on its own is ambiguous and the DOJ's interpretation of the regulation is entitled to deference.

6

information suggested by the 2010 Guidance and therefore serves as evidence of the DOJ's position that such information is sufficient to comply with the Reservations Rule. Mot. at 21-22. Plaintiff responds that the 2010 Guidance specifically notes that more information may be required in some circumstances and so the features identified in the Guidance are not exhaustive. Opp. at 4. He argues that, at minimum, hotels should be required to provide information as to the "core, essential features of a hotel guestroom," including the doors, maneuvering clearance at the bed, and bathroom features (i.e. toilet, sink, and shower/tub). *Id.* at 17. He also urges the court to reject Defendants' argument about the Consent Decree, which "never mentions the relevant regulation, never cites or uses the regulatory language, and was a settlement agreement reached in November of 2010—almost half a year before the regulation at issue in this case [became] effective and enforceable, i.e., March 15, 2011." Opp. at 24-25.

Some California federal courts have found that descriptions similar to the ones at issue in this case satisfy the Reservations Rule. For example, in *Barnes v. Marriott Hotel Srvcs, Inc.*, the hotel website at issue listed areas of the facility that were accessible, stated that its accessible guestrooms have 32-inch doorways, and listed individual room types with descriptions such as "[t]his room type offers mobility accessible rooms," and "[t]his room type offers accessible rooms with roll in showers." Case No. 15-cv-1409-HRL, 2017 WL 635474, at *10 (N.D. Cal. Feb. 16, 2017). The court determined that the hotel complied with the Reservations Rule because the 2010 Guidance made clear that such descriptions were "appropriate and acceptable" for hotels that had been constructed to be compliant with the 1991 Standards, including the hotel at issue in that case. *Id.* It accordingly granted summary judgment in favor of the defendant hotel. Similarly, the hotel defendant in *Love v. Marriott Hotel Srvcs., Inc.* provided information about its accessible rooms on its reservation website, listing features such as doorway width, route information, bathroom grab bars, bathtub seats, roll-in showers, and adjustable shower wands, among others. Case No. 20-cv-07137-TSH, 2021 WL 810252, at *6 (N.D. Cal. Mar. 3, 2021). The plaintiff asserted that this was insufficient because it did not provide specific information about other features, including maneuvering clearance at the bed, knee clearance for the desk and sink, and whether the showers have seats and grab bars. *Id.* at *5. In granting the defendant's motion to dismiss, the court

7

acknowledged the DOJ's direction that "a reservations system is not intended to be an accessibility survey." *Id.* at *5, *6. The court determined that the website descriptions "exceed the level of detail proposed by the ADA guidance" and were "far more extensive than the information provided in *Barnes*." *Id.* at *6. *Love* also noted that the 2010 Guidance specifically allows for individuals to contact a hotel "once reservations are made" to request additional details about a room, including the "specific layout of the room and bathroom, shower design, grab-bar locations, and other amenities available (e.g., bathtub bench)." *Id.* at *7 (quoting 2010 Guidance). The court explained that this language makes clear that "the very type of specificity that Love desires in this case is not required on a website." *Id.*

By contrast, at least one recent decision has denied a motion to dismiss a Reservations Rule claim. *See Garcia v. Patel and Joshi Hospitality Corp.*, Case No. 20-cv-2666-JGB, Docket No. 11 (C.D. Cal. Mar. 19, 2021). In that case, the defendant hotel's website provided some information about its accessible guestrooms, including the size number of beds, type of bathing facility (shower or bathtub), and features including bathroom grab bars and wide room doors. *Id.* at 2. The plaintiff asserted that this information was insufficient because the website "[did] not mention if the bedroom has compliant clear floor space, if the toilet is accessible, or if the table/desk is accessible." *Id.* The court rejected the defendant's argument that it did not violate the Reservations Rule because its website provided all the information suggested by the DOJ Guidance. *Id.* at 5. The court explained:

> [T]hat a website need not address every potential accessibility issue does not mean that it does not need to describe any potential issue or only those that the DOJ Guidance notes 'may be sufficient.' As the DOJ Guidance cautions, because there are 'wide variations in the level of accessibility that travelers will encounter,' the DOJ does not 'specify what information must be included in every instance.' As pleaded, this may be one such instance where additional information is needed.

*Id.* at 6 (quoting 2010 Guidance) (emphasis in original) (internal citations omitted). The court determined that the additional information identified by the plaintiff is "sufficiently narrow and consistent with the kinds of information that the DOJ Guidance identifies as potentially sufficient to comply with the Reservations Rule." *Id.* at 7. Accordingly, the court found that the defendant's concerns about being required to "list every accessibility requirement that may be important for any

8

Case 4:20-cv-08913-DMR   Document 28   Filed 04/05/21   Page 9 of 15

disabled individual" were unpersuasive. *Id.* at 7.

As described above, *Barnes* and *Love* focused on the features that the DOJ stated "may be sufficient" and concluded that because the respective defendants provided such information, their reservations systems did not violate the Reservations Rule. *See Barnes*, 2017 WL 635474, at *10; *Love*, 2021 WL 810252, at *6. *Love* also credited the defendant's argument about the DOJ's 2010 Consent Decree, finding that "[t]he DOJ's enforcement position in litigation about the accessibility guidelines further reinforces the sufficiency of the website's information." *Id.* at *7. The court has read and considered these opinions but finds their reasoning somewhat incomplete. Plaintiff is correct that the 2010 Guidance specifically leaves open the possibility that additional detail may be required in some circumstances. Neither *Barnes* nor *Love* discuss that portion of the DOJ's guidance in any detail or explain why more information was not required in those cases. Instead, both decisions essentially treated the DOJ's list of features as exhaustive rather than illustrative. The Consent Decree also does not speak to this issue even though it mirrors the features described in the 2010 Guidance. The reasoning in *Garcia* is also incomplete, but for the opposite reason. Unlike *Barnes* and *Love*, *Garcia* recognized that the features identified in the 2010 Guidance are illustrative rather than exhaustive. *See Garcia*, Docket No. 11 at 6. However, that case then summarily states that "this may be one such instance where additional information is needed," but does not explain why additional information is needed other than that the additional details proposed by the plaintiff appear to be "narrow." *Id.* at 6-7. Essentially, none of the cases identified by the parties explain when a hotel must provide more information than what the 2010 Guidance said "may be sufficient."

Fortunately, the 2010 Guidance provides insight on this issue. Specifically, the Guidance states that "[f]or hotels that were built in compliance with the 1991 Standards, it *may be sufficient to specific that the hotel is accessible . . . .*" 2010 Guidance (emphasis added). Thus, contrary to Plaintiff's argument, the Guidance clearly contemplates that hotels built in compliance with the current Standards may, in some cases, simply state that their rooms are "accessible" without further detail.[2] The DOJ then identified two situations in which more information might be required. First,

---

[2] The cited language only refers to the 1991 Standards. At the time the Guidance was released, the 2010 Standards were not yet in effect. However, the Guidance refers to the "current standards" in

9

"[f]or older hotels with limited accessibility features, information about the hotel should include, at minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms. In addition to the room information described above, these hotels should provide information about important features that do not comply with the 1991 Standards." 2010 Guidance. This discussion highlights the DOJ's instruction that older, unaltered hotels must provide specific information about important features that are *not* compliant with the current Standards. It makes sense to focus on such features, since people seeking to book a room labeled as "accessible" can reasonably expect such rooms to be compliant with the current accessibility Standards. The onus should not be on that person to research when the facility was constructed and/or altered to determine whether the hotel is likely to have up-to-date accessibility features. Thus, consistent with the 2010 Guidance, reservation websites for older, unaltered facilities should include information about important features that do not comply with the current Standards.

The 2010 Guidance also describes a second situation in which more information might be required. The DOJ recognized that even facilities that "are in full compliance with current standards may differ, and individuals with disabilities must be able to ascertain which features—in new and existing facilities—are included in the hotel's accessible guest rooms. For example, under certain circumstances, an accessible hotel bathroom may meet accessibility requirements with either a bathtub or a roll-in shower. The presence or absence of particular accessible features such as these may be the difference between a room that is usable by a particular person with a disability and one that is not." 2010 Guidance. Unlike the first situation described above, where an older facility has features that do not comply with the current Standards, the second situation involves hotels that are fully up-to-date with the most recent Standards. However, even fully compliant facilities may offer a variety of accessibility features that all comply with the current Standards. In the DOJ's example, the Standards permit an accessible hotel room to have *either* a shower *or* a bathtub. For some

---

several places, indicating that the DOJ did not intend to limit its reasoning to the 1991 Standards. *See* 2010 Guidance (stating that "hotel rooms that are in full compliance with current standards may differ"). Accordingly, the court interprets the 2010 Guidance to apply to "current standards," not just the 1991 Standards.

1    features, like bathing facilities, it is important for a patron to know which of several acceptable
2    alternatives is provided in order to decide whether that feature accommodates their disability.
3    Accordingly, under the 2010 Guidance, reservation websites should provide information about
4    important alternative features. This reasoning explains the list of features the DOJ said "may be
5    sufficient," since the listed features (type of room, size and number of beds, type of bathing facilities,
6    etc.) are all features that a hotel can provide in multiple ways while still complying with current
7    ADA requirements.

8           To summarize, the 2010 Guidance focuses on two kinds of information that a hotel must
9    provide in order to comply with the Reservations Rule: namely, information about any "important"
10   features that either (1) do not comply with the current Standards or (2) can be provided as one of
11   several acceptable alternatives. It makes less sense to require fully compliant hotels to specifically
12   identify their already compliant features when such features are the only way to satisfy the ADA's
13   requirements. For example, guestrooms built in accordance with the 2010 Standards must have door
14   openings with a clear width of 32 inches minimum. *See* 2010 Standards § 404.2.3. As noted by the
15   DOJ, older facilities that do not have such door clearance should specifically notify potential patrons
16   that their doorways are narrower than required. *See* 2010 Guidance. Since facilities that do *not*
17   provide such clearance are required to disclose that information on their reservations website, fully
18   compliant facilities should not be required to (under threat of liability) specifically confirm their
19   compliance since such a requirement is redundant and unnecessary.

20          The court's construction of the Reservations Rule and the 2010 Guidance rejects aspects of
21   both parties' arguments. The court declines to adopt Plaintiff's interpretation that a hotel must
22   confirm that all of its "core, essential features" are compliant with current Standards. For the reasons
23   explained above, a hotel that is fully compliant with the current Standards need only identify which
24   of several acceptable alternative features the room provides, such as whether it has a shower or a
25   bathtub (both of which are permitted under the Standards). An older hotel that does not comply
26   with the current Standards must explain which important features are noncompliant. Thus, up-to-
27   date facilities do not have to specifically confirm on their reservations system that their features are
28

11

compliant when such features are the only acceptable way to comply with the current Standards.[3] On the other hand, Defendants seem to argue that hotels only have to provide information about the features specifically identified in the 2010 Guidance. This is also incorrect. The DOJ specifically acknowledged that it "cannot specify what information must be included in every instance." 2010 Guidance. This language clearly indicates that the list of features in the 2010 Guidance is not meant to be exhaustive. As explained above, more information might be required for features that are not compliant with the current Standards or for features that can be provided in one of several acceptable ways.

With the framework established by the foregoing discussion in mind, the court turns to Plaintiff's specific allegations about which features Defendants should have identified in more detail.

### 1. Doors

Plaintiff contends that hotel reservation websites should be required to confirm that their guestrooms have doorways that are at least 32 inches wide, as required by the 2010 Standards. Opp. at 17. However, he acknowledges that the Hotel's website does in fact provide such information, so the argument is moot. *See* FAC ¶ 22.

In any case, as explained above, the 2010 Guidance specifically states that older facilities should inform potential patrons if they have narrower doorways than are required by the current Standards. As stated previously, it does not make sense to require facilities to confirm that they are compliant since they are already required to disclose non-compliance. Thus, Plaintiff's argument also fails on the merits.

### 2. Elevator

Plaintiff asserts that the dimensions of a hotel's elevator is of paramount importance for a

---

[3] At the hearing, Plaintiff argued that this interpretation would allow hotels to meet the requirements of the Reservations Rule by simply stating that their rooms are "accessible" even if they are not compliant with the current Standards. Not so. If a hotel represents that its features are accessible when they are in fact not compliant with the Standards, the hotel would be liable for violating the Reservations Rule and possibly for structural ADA violations. The only difference is that a plaintiff would have to physically visit the hotel in order to know that its reservations system violates the Reservations Rule.

1  wheelchair user to be able to reach their room. Opp. at 17. He contends that the Hotel fails to
2  provide any information about the size of its elevators, and such an omission constitutes a violation
3  of the Reservations Rule. *Id.* at 17-18.
4     The FAC contains no allegations relating to the Hotel's elevators or the description (or lack
5  thereof) of such elevators on the Hotel's website. The court accordingly declines to consider
6  allegations that are not in the FAC.

### 3. Bed

Plaintiff alleges that the Hotel's website does not confirm whether there are at least 30 inches of clear space on the side of the bed so he can transfer to the bed from his wheelchair. FAC ¶ 27. He argues that bed clearance is essential information for wheelchair users and should therefore be provided on a hotel's reservation website. *See* Opp. at 20.

The 2010 Standards require that accessible hotel guestrooms have at least one sleeping area that provides clear floor or ground space of at least 30 inches by 48 inches. *See* 2010 Standards §§ 305.3, 806.2.3. There are no exceptions or alternatives that apply to that requirement in the context of hotel guestrooms. Thus, a hotel guestroom built in accordance with the 2010 Standards must provide the specified bed clearance. Under the court's construction of the Reservations Rule and 2010 Guidance, the Hotel is not required to specifically identify features on its reservations system that are already compliant with the current Standards.

### 4. Toilet

Plaintiff argues that, as a wheelchair user, he needs toilets with seat heights between 17 and 19 inches and adjoining grab bars. Opp. at 18. The 2010 Guidance already requires toilets to have a seat height between 17 and 19 inches and grab bars "on the side wall closest to the water closet and on the rear wall." *See* 2010 Guidance §§ 604.4, 604.5. Thus, while the Hotel would have to disclose if it is an older facility that does not provide adjoining grab bars or the appropriate seat height, it is not required to confirm that these features are in fact compliant.

### 5. Sink

Plaintiff contends that he needs at least three pieces of information about a bathroom sink in order to determine whether it meets his accessibility needs. As an initial matter, he asserts that a

13

sink must have accessible knee clearance at a minimum 27 inches high for at least 8 inches in depth. The 2010 Standards provides that knee clearance underneath certain elements, including a sink, must be at minimum 30 inches wide and 27 inches high. *See* 2010 Standards §§ 306.3.1, 306.3.5. Thus, the Standards already require the specifications Plaintiff requests. Plaintiff also argues that the ADA requires sink plumbing to be wrapped to protect against burning contact and that the bathroom mirror is lowered to a certain height. Opp. at 18. As Plaintiff acknowledges, these features are required by the 2010 Standards. *See* 2010 Standards §§ 606.4 (pipes under sinks and lavatories), 603.3 (mirror height above lavatories or countertops). To the extent that these features are "important" features under the 2010 Guidance, then a hotel would violate the Reservations Rule by failing to disclose that their sinks do not comply with the 2010 Guidance. Here, however, Plaintiff does not allege that the Hotel is not compliant with the most current Standards. Since the Hotel would already be required to disclose features that are not compliant, it is redundant to require the Hotel to disclose compliant features.

### 6. Showers

Finally, Plaintiff asserts that the Hotel's website should disclose whether its roll-in showers have grab bars, a detachable hand-held shower spray unit, and a seat. Opp. at 19. With respect to grab bars, the 2010 Standards require all accessible showers to have grab bars. *See* 2010 Standards § 608.3. Thus, the Reservations Rule would require an older facility to disclose that they do not have that feature. For the reasons stated above, there is no parallel requirement for a newer facility to affirm its compliance. Similarly, accessible showers are required to have shower wands. 2010 Standards § 607.6. Requiring hotels to specifically confirm that their accessible shower stalls comply with this standard is redundant and unnecessary. In any case, the Hotel's website already states that the Hotel's roll-in showers have "hand-held shower sprayers with extensions," so the issue is moot. FAC ¶ 23.

Finally, as Plaintiff acknowledges, the 2010 Standards do not require all accessible showers to provide seats. *See* FAC ¶ 30; *see also* 2010 Standards § 608.3.2. The 2010 Guidance specifically identifies some features, like bathtub benches, as "amenities" that a hotel is not required to list on its reservation system. *See* 2010 Guidance (stating that individuals with disabilities may wish to

14

1  contact the hotel or reservations services for "more detailed information . . . such as the specific layout of the room and bathroom, shower design, grab-bar locations, and *other amenities* available (e.g., bathtub bench)."). Thus, providing a shower seat for a roll-in shower is optional under the ADA and the 2010 Guidance suggests that the Reservations Rule does not require hotels to list optional amenities. Notably, though, the website at issue in this case does actually state that the Hotel's roll-in showers have shower benches, so that issue is moot. FAC ¶ 30.

In sum, the Hotel is not required to specifically confirm that its roll-in showers have grab bars and detachable shower wands since those features are required by the 2010 Standards. The Hotel also does not have to list features that are not actually required by the ADA, such as shower seats.

## V. CONCLUSION

Plaintiff lists various features that he asserts the Hotel should have, and did not, describe on its reservations website. All but one of these features are mandatory under the 2010 Standards and thus a hotel built in compliance with those Standards need not list its compliant accessibility features on its reservations system. The ADA does not require roll-in showers to have shower seats, and nothing in the Reservations Rule or the 2010 Guidance suggests that hotels must describe optional amenities. Accordingly, Plaintiff has not adequately alleged that the Hotel failed to describe its accessibility features in sufficient detail. Defendants' motion is therefore granted. Since no additional factual detail about the identified features would cure the deficiencies identified in this order, amending the complaint would be futile. Accordingly, the FAC is dismissed without leave to amend.

**IT IS SO ORDERED.**

Dated: April 5, 2021



Donna M. Ryu
United States Magistrate Judge